UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBIN GODDARD,**

    **Plaintiff,**

**vs.**

    Civil Action 2:11-cv-00809
    Judge Michael H. Watson
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Plaintiff, Robin Goddard, filed this action seeking review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income.  In her application, which she filed on April 10, 2008, Plaintiff alleges disability since January 9, 2008, due to a variety of conditions including shoulder and lower back injuries, diabetes, and hypertension.[1] (R. at 72–74, 125.)

After initial administrative denials of Plaintiff's claim, Administrative Law Judge ("ALJ") Carol K. Bown held a hearing on October 25, 2010 at which a vocational expert testified.  (R. at 292–309.)  Although counsel represented her at the hearing, Plaintiff failed to personally appear and testify.  (*Id.*)  On November 29, 2010, the ALJ issued an unfavorable decision denying benefits.  (R. at 11-27.)  This decision became the final decision of the

---

[1] Plaintiff was forty-six years old when she filed her April 2008 applications.  (R. at 70.)

Commissioner when the Appeals Council denied review on July 8, 2011. (R. at 4.)

Plaintiff thereafter timely commenced this civil action. In her Statement of Errors, Plaintiff contends that the ALJ erred in adopting the residual functional capacity of a prior 2007 ALJ decision, pursuant to the holding of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), because her circumstances changed following the previous administrative decision. Following the Commissioner's Memorandum in Opposition and Plaintiff's Reply, the matter is now ripe for decision. For the reasons that follow, it is **RECOMMENDED** that the Court **REMAND** this case for further consideration.

## II. PRIOR ADMINISTRATIVE DECISION

Prior to filing her current claim, Plaintiff filed applications for disability insurance benefits and supplemental social security income in June 2004. (R. at 29.) On October 25, 2007, ALJ Thaddeus J. Armstead Sr. issued an unfavorable decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.

Applying the five-step sequential evaluation process,[2] the ALJ first found that Plaintiff

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available

had not engaged in substantial gainful activity since May 28, 2004.  (R. at 31.)  Next, the ALJ found that Plaintiff's severe impairments included peripheral vascular disease; diabetes mellitus, under adequate control; degenerative changes of the right ankle and left shoulder; and a lumbar vertebrogenic disorder.  (*Id.*)   The ALJ concluded, however, that Plaintiff had failed to produce sufficient evidence to demonstrate a severe mental impairment.  (R. at 33–35.)  At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 35.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC").  ALJ Armstead found Plaintiff was capable of work at the light exertional level with the following restrictions:

> [A]t all relevant times through December 31, 2005, . . . [Plaintiff] was limited to standing 6 hours during an 8-hour workday with normal breaks, with no continuous walking of more than 5 minutes followed by 5 minutes cessation each time; unlimited pushing and pulling with the upper extremities, but only occasionally with the lower extremities; no climbing of ladders, ropes or scaffolds, but occasionally climbing ramps and stairs; frequent kneeling, crouching, and stooping, but occasional balancing and crawling; no exposure to extremes of cold or working on uneven or slippery surfaces; and she is limited to simple, repetitive, i.e., unskilled, work tasks. Beginning January 1, 2006, the claimant is additionally limited to sitting a total of 6 hours and standing/walking a total of 2 hours during an 8-hour workday, with the aforementioned limitation to 5 minutes of walking followed by a cessation of 5 minutes each time, and she cannot perform overhead reaching bilaterally.

(R. at 35–36.)  In reviewing the objective medical evidence to support his findings, the ALJ recognized that Plaintiff suffered from mild degenerative disc disease of the lumbar spine, and

---

in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that a May 9, 2007 MRI had shown grade 2 spondylolisthesis. (R. at 32, 37.) The ALJ noted, however, that the medical evidence did "not document the presence of nerve root compression or radiculopathy, such as reflex, sensory, or motor strength deficits." (R. at 37.) The ALJ considered Plaintiff's diabetes in considering her RFC, but emphasized that it appeared adequately controlled from the treatment records. (*Id.*)

Based on the above RFC, ALJ Armstead ultimately concluded Plaintiff was not disabled under the Social Security Act.

### III.  MEDICAL RECORDS[3]

On May 9, 2007, Plaintiff underwent testing due to complaints of chronic low back pain. (R. at 147, 156.) Testing revealed "[b]ilateral par defects at L5 with grade 2 spondylolisthesis at L5 S1 causing severe narrowing of both neuroforamina." (*Id.*)

Plaintiff began treating with primary care physician Saleem Khan, M.D., at least as early as March 17, 2008. (R. at 153.) Upon initial examination, Plaintiff was 5'4" tall and weighed 196 pounds. (*Id.*) Plaintiff complained of various conditions including chronic low back pain radiating to her right leg. (*Id.*) Dr. Khan's diagnoses included diabetes mellitus, uncontrolled, and lumbar spondylolisthesis with lumbar radiculopathy. (*Id.*) Additionally, testing at this time suggested that Plaintiff had a ventilatory disorder with a risk of chronic obstructive pulmonary disease ("COPD") of greater than twenty-one percent. (R. at 160.) Plaintiff's "estimated lung age" at this time was ninety-three years. (R. at 160.) Later in March 2008, Dr. Khan requested

---

[3] In the November 2010 administrative decision, ALJ Brown found that Plaintiff had severe mental impairments and assigned corresponding functional limitations. Plaintiff does not appear to challenge these conclusions. Accordingly, the undersigned's review of the medical record will focus on Plaintiff's physical impairments.

4

that Plaintiff undergo a consultation for lumbar radiculopathy. (R. at 145.) Treatment notes from April 11, 2008 reflect that Plaintiff experienced some improvement on medication, but demonstrated tenderness upon palpation. (R. at 152.)

On April 2, 2008, Plaintiff saw Arthur Neil Cole, M.D., with complaints of back and right leg pain. (R. at 143.) Plaintiff indicated at this time that her back pain radiated into both lower extremities and noted that standing aggravated her pain. (*Id.*) Plaintiff reported that she smoked a half pack of cigarettes each day. (*Id.*) Plaintiff further indicated that injections had not improved her symptoms. (*Id.*) Upon examination, Plaintiff was mildly tender to palpitation, had a positive right straight leg test at thirty degrees, and had decreased sensory. (*Id.*) Dr. Cole's findings, however, also included that Plaintiff had full motor strength, no spasms, and a normal gait. (*Id.*) Dr. Cole recommended x-rays. (R. at 144.) April 14, 2008, x-rays demonstrated "[l]isthesis of L5 . . . [and] some mild degree of instability." (R. at 146.) Dr. Cole recommended that Plaintiff undergo a laminectomy and a posterolateral fusion. (R. at 141.)

Spirometric testing from July 2008 suggested that Plaintiff was still suffering from ventilatory disorder with a risk of COPD at greater than twenty-one percent. (R. at 269.) Plaintiff's estimated lung age at this time was 107 years. (*Id.*) On July 18, 2008, treatment records from Dr. Khan's office reflect that he diagnosed Plaintiff with COPD. (R. at 251.)

In August 2008, Plaintiff went to the hospital complaining of abdominal pain. (R. at 186, 188.) She was diagnosed with pancreatitis. (*Id.*) Testing revealed "[n]o acute intra-abdominal or cardiopulmonary process." (R. at 191.)

On August 14, 2008, Dr. Khan's notes reflect that Plaintiff's lungs were clear, but he continued to diagnose Plaintiff with COPD. (R. at 249.) In September 2008, Dr. Khan discussed

5

the risk of continuing to smoke with Plaintiff. (R. at 288.) Treatment notes from October 10, 2008, reflect that Plaintiff refused any further consultation for surgery and wanted to be treated with medication for her back pain. (R. at 245.) Plaintiff denied shortness of breath or chest pain at this time, and examination revealed that her lungs were clear. (*Id.*)

State agency physician Leslie Green, M.D., evaluated Plaintiff's physical RFC in October 2008 based on her review of the record. (R. at 214–21.) Dr. Green opined that Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently; standing and/or walking for two hours in an eight-hour workday; and sitting for six hours in an eight-hour workday. (R. at 215.) Dr. Green indicated that Plaintiff could never climb ladders, ropes, or scaffolds; could occasionally climb stairs, balance, or crawl; and could frequently stoop, kneel, or crouch. (R. at 216.) Dr. Green indicated that her RFC assessment adopted ALJ Armstead's October 25, 2007 determination pursuant to *Drummond*. (R. at 215.) She provided no further analysis justifying her decision. On February 27, 2009, state agency physician Leigh Thomas, M.D., affirmed Dr. Green's decision. (R. at 240.)

Plaintiff received regular treatment from Dr. Khan and his staff from November 2008 through at least February 2010. (R. at 273–86.) Plaintiff routinely denied shortness of breath and chest pain, and Dr. Khan and his staff frequently found that Plaintiff's lungs were clear. (*Id.*). Plaintiff, however, also received frequent diagnoses of COPD during this period. (*Id.*) In May 2009, treatment records reflect that Plaintiff's diabetes was uncontrolled and that Plaintiff was non-compliant with her diet. (R. at 280.) Plaintiff received diabetic education. (*Id.*) On September 16, 2009, Plaintiff underwent an electromyographic (**"EMG"**) examination for evaluation of her low back and leg pain as well as her foot paresthesias. (R. at 272.) The EMG

6

revealed radiculopathy and mild diabetic neuropathy. (*Id.*) In December 2009, Dr. Khan diagnosed peripheral neuropathy. (R. at 275.)

## IV. EXPERT TESTIMONY

Vanessa Harris testified as a vocational expert at the October 2010 administrative hearing. Ms. Harris identified Plaintiff's past work as laundry operator, which she classified as medium semi-skilled work, and molding machine tender, which she classified as light unskilled work. (R. at 296–97.)

The ALJ then asked Ms. Harris to consider a hypothetical person who could perform a reduced range of light work. (R. at 297.) The ALJ specifically limited such a person to standing for two hours in a workday; sitting six hours in a workday; no continuous walking for more than five minutes; unlimited pushing and pulling with upper extremities, but only occasional pushing and pulling with lower extremities; no climbing ropes or scaffolds; occasional climbing of ramps and stairs; frequent kneeling, crouching, and stooping; and occasional balancing and crawling. (*Id.*) The ALJ also limited this hypothetical person to no exposure to extremes of cold or work on uneven or slippery surfaces. (*Id.*) Finally, the ALJ restricted this person to simple routine repetitive tasks, superficial interaction with others, and no more than occasional changes in work setting. (*Id.*)

Ms. Harris testified that such a person would not be able to perform Plaintiff's past work. (*Id.*) Nevertheless, Ms. Harris found such a person capable of various light unskilled jobs. (R. at 298.) Ms. Harris also found such a person capable of some sedentary unskilled work including paper inserter. (*Id.*) Ms. Harris further concluded that the additional limitation of no crawling, and only occasional stooping, kneeling, or crouching would not affect her testimony. (*Id.*)

Precluding the hypothetical worker from hazardous machinery or unprotected heights also did not affect Ms. Harris' determinations. (*Id.*)

Plaintiff's counsel questioned Ms. Harris about various sedentary jobs she identified. (R. at 299–308.) Ms. Harris' testimony included that a paper inserter is an individual who stuffs envelopes. (R. at 307.)

## V. ADMINISTRATIVE DECISION

On November 29, 2010, ALJ Bowen issued her decision.[4] (R. at 11–27.) The ALJ first found that Plaintiff had not engaged in substantially gainful activity since April 7, 2008. (R. at 13.) The ALJ concluded, referencing the prior October 2007 decision, that Plaintiff has the severe impairments of peripheral vascular disease; diabetes mellitus, under adequate control; degenerative changes of the right ankle; and a lumbar vertebrogenic disorder. (R. at 13.) The ALJ also added the severe impairments of moderate obesity; mood disorder; learning disorder; and borderline intellectual functioning. (R. at 13.) The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.)

At step four of the sequential evaluation process, the ALJ concluded that Plaintiff could perform a reduced range of light work. The ALJ specifically provided:

> From the prior decision at all relevant times through December 31, 2005, . . . [Plaintiff] was limited to standing 6 hours during an 8-hour workday with normal breaks, with no continuous walking of more than 5 minutes followed by 5 minutes cessation each time; unlimited pushing and pulling with the upper extremities, but

---

[4] In evaluating Plaintiff's application for supplemental security income, the ALJ considered the period from April 2008, the date of Plaintiff's application, to September 2009, when Plaintiff's husband began receiving Veterans Administration benefits. (R. at 11.) Plaintiff does not challenge the application of this time period.

> only occasionally with the lower extremities; no climbing of ladders, ropes or scaffolds, but occasionally climbing ramps and stairs; frequent kneeling, crouching, and stooping, but occasional balancing and crawling; no exposure to extremes of cold or working on uneven or slippery surfaces; and she is limited to simple, repetitive, i.e., unskilled, work tasks. Beginning January 1, 2006, the claimant is additionally limited to sitting a total of 6 hours and standing/walking a total of 2 hours during an 8-hour workday, with the aforementioned limitation to 5 minutes of walking followed by a cessation of 5 minutes each time, and she cannot perform overhead reaching bilaterally.
>
> <u>With these modifications and clarifications from the current application</u>: no operation of foot controls; occasional stooping, kneeling, crouching, and crawling; no exposure to hazardous machinery or unprotected heights; simple routine, repetitive tasks with no more than occasional changes in the work setting; no time or production demands; and only superficial interaction with others.

(R. at 20.) The ALJ suggested that she found the RFC determination of the prior administrative decision to be binding as to Plaintiff's RFC. (R. at 11.) The ALJ further stated that she gave the opinions of Drs. Green and Thomas, who adopted the previous ALJ's physical RFC pursuant to *Drummond*, great weight regarding Plaintiff's functional capacity. (R. at 11,14.) Furthermore, in reaching her RFC determination, the ALJ acknowledged that a 2009 EMG had displayed evidence of radiculopathy and peripheral neuropathy, but felt that the RFC she assigned fully accommodated these conditions. (R. at 21.) The ALJ also noted that while Plaintiff's diabetes was at times uncontrolled, Dr. Khan's notes reflected that Plaintiff was not compliant with her diabetic diet. (*Id.*)

Applying the above RFC, the ALJ found that Plaintiff was not capable of performing her past relevant work. The ALJ concluded, however, based on Ms. Harris' testimony, that Plaintiff could perform a significant number of jobs in the national economy and was, therefore, not disabled.

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the Commissioner's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

## VII. LEGAL ANALYSIS

In her Statement of Errors, Plaintiff contends that ALJ Bowen erred in concluding that she was bound by ALJ Armstead's prior RFC determination. Plaintiff stresses that the record contains significant new evidence that demonstrates changed circumstances. Upon review, the undersigned agrees that, under the circumstances of this case, ALJ Bowen erred in finding that she was bound by ALJ Armstead's previous RFC determination.[5]

In *Drummond*, the United States Court of Appeals for the Sixth Circuit held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. 126 F.3d at 841–42. The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. Accordingly, the Sixth Circuit reasoned that when an ALJ seeks to deviate from a prior ALJ's decision, "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of *res judicata*." *Id.* at 843. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because the evidence did not indicate that the claimant's condition had improved. *Id.* at 843.

Following *Drummond*, both the Sixth Circuit and this Court have indicated that when a claimant seeks to avoid application of a prior ALJ's finding, he or she must produce evidence demonstrating that his or her condition has worsened since the time of the prior determination.

---

[5] Plaintiff also briefly challenges certain representations of the vocational expert. Because the undersigned concludes that the ALJ was not justified in applying *Drummond*, it is unnecessary to reach this issue.

11

*See, e.g.*, *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 515 (6th Cir. 2011) (holding that an ALJ was justified, under *Drummond*, in adopting a previous ALJ's finding that the claimant had a "limited education" because the claimant "introduced no new or additional evidence with respect to illiteracy versus limited education") (internal quotations omitted); *Holt v. Astrue*, No. 1:10–cv–439, 2011 WL 3861891, at *7 (S.D. Ohio July 6, 2011) ("[B]ecause Plaintiff failed to present any new and/or material evidence in the record that showed Plaintiff's condition had worsened since [the] previous unfavorable decision, [the ALJ] acted properly by following *Drummond* and . . . adopting said decision.") (Report and Recommendation later adopted); *cf. also Salsgiver v. Comm'r of Soc. Sec. Admin.*, No. 1:11–CV–351, 2012 WL 2344095, at *12 (N.D. Ohio June 20, 2012) ("It is the claimant's burden to present evidence showing that her symptoms have changed since the time of the Commissioner's prior determination obviating the application of the ruling in *Drummond*.").

Additionally, the Social Security Administration issued an Acquiescence Ruling following *Drummond*. Specifically, in light of *Drummond*, Social Security Acquiescence Ruling 98–4(6) mandates as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).  Within the Social Security context, evidence is generally considered to be material if there is a reasonable probability that the Commissioner would have reached a different decision if he or she had considered the new

evidence. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).

In this case, ALJ Bowen applied *Drummond* and concluded that she was bound by ALJ Armstead's physical RFC determination that Plaintiff could perform a reduced range of light work. (*See* R. at 11, 20.) In addition to explicitly finding that the *Dummond* holding applied, she gave great weight to the state agency reviewing physician opinions of Drs. Green and Thomas, who evaluated Plaintiff's physical functional capacity and adopted ALJ Armstead's physical RFC finding pursuant to *Drummond*. (R. at 14.)

The undersigned finds that ALJ Bowen erred in applying *Drummond* under the circumstances of this case. Viewing the medical records as a whole, and comparing this evidence to ALJ Armstead's prior written decision and findings, significant new evidence suggests that Plaintiff's impairments worsened since the prior RFC determination.

First, the record contains at least some evidence of new impairments that the previous decision did not consider. Specifically, on two occasions, spirometric testing suggested that Plaintiff had a ventilatory disorder and an estimated lung age well in excess of her actual age. (R. at 160, 269.) Dr. Khan and his staff diagnosed Plaintiff with COPD on multiple occasions. (*See, e.g.*, R. at 279, 282, 284.) There is no indication from the October 2007 decision, however, that ALJ Armstead accounted for this condition. Although the evidence may not ultimately reflect that Plaintiff's lung condition is severe, as the Commissioner contends, the ALJ was still required to account for all of Plaintiff's impairments, both severe and non-severe, in assessing her RFC. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (holding that once a claimant establishes a severe impairment, an ALJ must "consider both the severe and non-severe impairments in the remaining steps"). Furthermore, the ALJ herself recognized that

13

Plaintiff had an additional severe impairment that the previous decision did not consider, moderate obesity. (R. at 13.) The fact that ALJ Bowen found a new severe impairment implies that Plaintiff's condition had deteriorated on some level. *See Salsgiver*, 2012 WL 2344095, at *13 (holding, in considering the application of *Drummond*, that "the ALJ's recognition of . . . additional severe impairments suggests that Plaintiff's overall condition had further deteriorated to some degree since the prior ALJ's ruling").

Perhaps most importantly, the medical evidence indicates that Plaintiff's diabetes and back impairments worsened after the first ALJ issued his decision. Within the prior decision, ALJ Armstead emphasized that Plaintiff's diabetes was under adequate control. Although ALJ Armstead recognized that testing showed spondylolisthesis, in assigning an RFC he stressed that there was no evidence of nerve root compression or radiculopathy. New evidence within the current record conflicts with these findings. In particular, a September 2009 EMG revealed diabetic peripheral neuropathy, a condition ALJ Armstead did not consider in determining that Plaintiff's diabetes was adequately controlled. (R. at 272.) Additionally, on at least two occasions, Dr. Khan's treatment notes reflect that Plaintiff's diabetes was uncontrolled. (R. at 153, 280.) In addition to diabetic neuropathy, the September 2009 EMG revealed radiculopathy, a condition which ALJ Armstead explicitly indicated was not present in the prior record. (R. at 272.) Dr. Khan also diagnosed lumbar radiculopathy on at least one occasion. (R. at 153.) Accordingly, especially in light of the September 2009 EMG, ALJ Bowen was not justified in concluding that Plaintiff's conditions had not significantly changed. *See Ray v. Astrue*, No. 1:11–cv–194, 2012 WL 2160826, at *3–5 (S.D. Ohio June 13, 2012) (holding that an ALJ erred in applying *Drummond* when he failed to account for MRI results from after the prior

administrative decision) (Report & Recommendation later adopted).

Furthermore, the state agency physician opinions, at least in their current form, do not provide adequate support for ALJ Bowen's determination that she was bound by the prior RFC determination. As detailed above, in October 2008 Dr. Green opined that the prior October 2007 physical RFC should apply pursuant to *Drummond*. (R. at 215.) Dr. Thomas affirmed this decision in February 2009. (R. at 240.) The Court recognizes that whether new medical evidence demonstrates significantly changed circumstances ultimately involves a medical judgment. Accordingly, a medical expert opinion that a prior RFC determination should be adopted would likely be strong evidence if that expert considered all of the new evidence a claimant offered. Here, however, the opinions of Drs. Green and Thomas are both highly conclusory. It is unclear what portions of the current medical record these physicians actually considered in applying the prior RFC determination. At the very least, it is clear that these physicians did not consider the September 2009 EMG results. Under these circumstances, these opinions did not provide adequate grounds for applying *Drummond* to Plaintiff's physical RFC.

Nor was the ALJ entitled to rely on her own medical opinion to account for the new evidence. Although ALJ Bowen explicitly stated that she was applying *Drummond*, she also summarized much of the new evidence in the record and assigned a few additional functional limitations to Plaintiff's RFC. The ALJ explicitly referenced the 2009 EMG findings of radiculopathy and neuropathy, but concluded that the new evidence was not significant enough to alter her RFC determination. (R. at 21.) The ALJ further recognized that Plaintiff's diabetes was at times uncontrolled, but opined that the effects of Plaintiff's diabetes would "be reduced if she lost weight and brought her sugar levels under control." (*Id.*) The ALJ did not cite any

supporting medical opinion evidence for these conclusions. Instead, these determinations appear to be based on her own interpretation of the evidence.

Regardless of whether the ALJ made the above observations to support her application of *Drummond* or as an independent basis for her RFC findings, substantial evidence does not support her conclusions. In considering medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also* Isaacs v. Astrue, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted). Here, the ALJ was not entitled to rely on her own lay opinion to interpret new medical evidence—including the September 2009 EMG results—and conclude that the RFC she assigned accounted for any new or worsened impairments. Although the ALJ may ultimately be correct that her RFC assignment accounts for the new medical evidence, the current record does not provide adequate support for this determination. *Cf. Brewer v. Astrue*, No. 1:10–cv–01224, 2011 WL 2461341, at *6 (N.D. Ohio June 17, 2011) ("Although the ALJ's assumption appears reasonable to a lay person and might ultimately be correct, he has no special expertise to make such an assumption.").

## VIII. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **REMAND** this case for further consideration.

## IX.  NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  August 10, 2012                              /s/ *Elizabeth A. Preston Deavers*
                                                                               Elizabeth A. Preston Deavers
                                                                               United States Magistrate Judge